UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LES G. HEGEL,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LINDA S. MCMAHON, Commissioner of Social Security,[1]<br><br>　　　　Defendant. | No. CV-06-135-CI<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

　　　Before the court are cross-Motions for Summary Judgment. (Ct. Recs. 17, 20).  Attorney Maureen J. Rosette represents the Plaintiff.  United States Attorney Pamela J. DeRusha and Special Assistant United States Attorney Thomas M. Elsberry represent the Defendant.  The parties have consented to proceed before a magistrate judge.  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment

---

　　　[1] As of January 20, 2007, Linda S. McMahon succeeded Defendant Commissioner Jo Anne B. Barnhart as Acting Commissioner of Social Security.  Pursuant to FED. R. CIV. P. 25(d)(1), Commissioner Linda S. McMahon should be substituted as Defendant, and this lawsuit proceeds without further action by the parties.  42 U.S.C. § 405(g).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

**JURISDICTION**

Les Hegel, Plaintiff, filed for Supplemental Security Income benefits on May 17, 2000. (Tr. 83-86.) He alleged disability due to various physical problems, mental mania, and depression, with an onset date of November 3, 1998. (Tr. 83, 92.) His application was denied both initially and upon reconsideration. (Tr. 63-66, 69-71.) He timely requested a hearing, which was held on April 18, 2001, before Administrative Law Judge (ALJ) Mary Bennett Reed. (Tr. 468.) In an Order dated April 30, 2003, the Appeals Council vacated the ALJ's unfavorable decision and remanded the case for further proceedings. (Exhibit 7B). After hearings on June 16, 2004, and November 16, 2004, the ALJ denied Plaintiff's application and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 10-13.) The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

**SEQUENTIAL EVALUATION**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner is governed by a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If she is, benefits are denied. If she is not, the decision maker

proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity assessment is considered. If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform her previous work, then the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education, work experience and residual functional capacity? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.

*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. In steps one through four, a claimant must demonstrate a severe impairment and an inability to perform past work. *Erickson v. Shalala,* 9 F.3d 813, 816-17 (9th Cir. 1993). If a claimant meets those requirements, the burden shifts to the Commissioner to demonstrate a claimant can engage in other types of substantial gainful work which exist in the national economy. *Id.* at 817 (*citing Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984)). To make this determination, the Commissioner must consider a claimant's age, education, and work experience. 20 C.F.R. § 404.1520(f). *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287 (1987).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed

*de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### STATEMENT OF THE CASE

Detailed facts of the case are set forth in the transcript of proceedings and the ALJ's decision and are briefly summarized here. Plaintiff was 49 at the time of the initial hearing, and 53 at the time of the last two hearings. (Tr. 241.) Plaintiff is single with no children. (Tr. 471-72.) He completed the eleventh grade and his GED. (Tr. 472.) He had Certified Nurse's Aid (CNA) training in 1998. (Tr. 502-03.) Over the last fifteen years, Plaintiff worked as a janitor, dog groomer, nurse's aide, and driver. (Tr. 93.) He left his most recent job as a driver after injuring his back and left wrist on the job. (Tr. 93, 475.) Plaintiff testified that he suffers from anxiety, especially in public. (Tr. 490-92.) Doctors Arnold and Everhart diagnosed him with a depressive disorder. (Tr. 274, 328.) Doctors Bailey, Arnold, Everhart, and Toews agreed that Plaintiff has a personality disorder, nos. (Tr. 274, 328, 164, 539.) The doctors differed as to the extent to which Plaintiff's diagnosis affects his ability to work. (Tr. 165, 275, 331-333, 545-546.)

Regarding his daily activities, Plaintiff testified he takes care of his dogs, waters the lawn, takes a walk, and sometimes dusts and cleans. (Tr. 571.) He does not like to grocery shop because he becomes paranoid in public places. (Tr. 492.) He has no hobbies. (Tr. 571.)

Plaintiff's partner Kevin Robinson, vocational expert Tom Moreland, vocational expert Deborah LaPoint, medical expert Jay M. Toews, Ed.D., and medical expert Arthur B. Craig also testified.

1  (Tr. 467, 519, 586.)

## ADMINISTRATIVE DECISION

In the final opinion, at step one, ALJ Reed found Plaintiff had not engaged in substantial gainful activity since the onset of the disability. (Tr. 42.)  At step two, she found that the degenerative disc disease and coronary artery disease are "severe" based on the requirements in 20 C.F.R. § 416.920(b) (Tr. 42-43), but found that the claimant did not have a severe mental impairment. (Tr. 41-42.) At step three, the ALJ found that the impairments do not meet or medically equal one of the listed impairments. (Tr. 43.)  The ALJ found that the claimant's allegations regarding his limitations are not credible. (Tr. 43.)  In the case of the mental impairments, the ALJ found that the evidence of malingering in multiple tests indicated that the claimant was not credible in his self reporting of mental symptoms. (Tr. 37-38.)  At step four, she found the claimant could perform a significant range of light work; claimant could sit, stand, and/or walk 6 hours in an 8 hour day.  (Tr. 43.) She found the claimant not disabled as defined in the Social Security Act.  (Tr. 43.)

## ISSUES

The question presented is whether the ALJ's decision is supported by substantial evidence and is free of legal error. Plaintiff argues that the ALJ erred when she: (1) improperly evaluated the medical evidence in determining the severity of Plaintiff's mental impairment; (2) relied on the testimony of a non-examining medical expert; and (3) improperly rejected the opinions of Plaintiff's examining psychologists.  (Ct. Rec. 18, at 15-14.)

**DISCUSSION**

In a disability proceeding, a treating or examining physician's opinion is given more weight than that of a reviewing or non-examining physician.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004)*; Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (*quoting Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If a treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.  *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given.  *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605.  To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his or her interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the ALJ set forth a detailed summary of Plaintiff's medical treatment since November 1998.  Her summary is supported by the record.

In June 2000, James Bailey, Ph.D., clinical psychologist, examined Plaintiff in conjunction with public assistance benefits. (Tr. 27.)  The results of Plaintiff's mini-mental status examination were normal.  *Id.*  The Minnesota Multiphasic Personality Inventory (MMPI) scores were not found valid, based on Dr. Bailey's assessment

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

that Plaintiff exaggerated his symptoms. *Id.* Dr. Bailey diagnosed mood disorder and personality disorder, nos. *Id.* In the examination form, he indicated Plaintiff exhibited a few "marked" and "moderate" social limitations. *Id.* He opined such limitations would last up to a year. *Id.*

In July 2000, the claimant visited his treating physician, Dr. Susan Ashley, M.D. He complained of depression, a lifelong affliction related to childhood abuse. *Id*. Dr. Ashley diagnosed depression and anxiety and prescribed Paxil. (Tr. 27, 188).

John Arnold, Ph.D., clinical psychologist, performed a psychological assessment in May 2001. (Tr. 27.) Plaintiff described his current physical issues, his abusive father, a suicide attempt 20 years prior, and his daily activities. (Tr. 28.) He also told Dr. Arnold that he was taking ¼ to ½ pill of Paxil daily. *Id*. Dr. Arnold administered the MMPI-II the results of which he deemed invalid. *Id.* The MCMI-III and P-3 were deemed valid. *Id.* Dr. Arnold interpreted a tendency towards self debasement in the MCMI-III as typical of Plaintiff's personality type, thus not indicative of malingering. *Id*. Dr. Arnold noted mild depression as shown on the Beck inventory. (Tr. 33.) Dr. Arnold diagnosed Plaintiff with anxiety disorder; somatoform disorder features; personality disorder, nos; and global assessment of functioning of 55. (Tr. 28.) He opined that Plaintiff was moderately limited in: (1) the ability to remember locations and work-like procedures; (2) carry out detailed instructions; (3) work in coordination with or proximity to others without being distracted by them; (4) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (5) travel in unfamiliar places or use public

transportation; and (6) set realistic goals or make plans independently of others. *Id.*  Further, he opined Plaintiff was markedly limited in: (1) the ability to understand and remember detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities on a schedule, maintain attention and be punctual within customary tolerances; (4) complete a normal workday and workweek without an unreasonable number and length of rest periods; and (5) accept instructions and respond appropriately to criticism from supervisors.  *Id*.

In Dr. Arnold's second evaluation in June 2002, he diagnosed major depression, recurrent, moderate; somatoform disorder features; and schizoid personality features.  *Id.*  He opined Plaintiff had moderate limitations in: (1) the ability to understand, remember and follow complex instructions; (2) learn new tasks; (3) relate appropriately to coworkers and supervisors; (4) respond appropriately to and tolerate the pressures and expectations of a normal work setting; and (5) control physical or motor movements and maintain appropriate behavior. (Tr. 29.)  Further, he opined Plaintiff had marked limitations in the ability to exercise judgement and make decisions and interact appropriately in public contacts. *Id.*  He expected this limitations to last six months. *Id.*  Six months later, Dr. Arnold completed the same form, this time diagnosing major depression, recurrent, moderate; somatoform disorder features; and personality disorder, nos, with obsessive and schizoid features. *Id.*

In Dr. Arnold's fourth and fifth evaluations, he noted recent depressive symptomatology related to Plaintiff's heart condition, diagnosing personality disorder, nos, with depressive, paranoid and

passive aggressive features and somatoform disorder features. *Id.* Dr. Arnold opined that Plaintiff would have moderate limitations in cognitive functioning and a marked limitation in the ability to exercise judgment and make decisions. *Id.*

In January 2004, Joyce Everhart, Ph.D., examined Plaintiff due to allegations of anxiety, depression, intellectual problems, somatoform disorder and personality disorder. *Id.* She administered and interpreted several tests including: full scale IQ, General Memory, WMS-III, MMPI-2, and TOMM. (Tr. 30.) The results of the tests suggested lack of best effort and malingering. *Id.* She diagnosed depressive disorder, nos; malingering; personality disorder, nos; and global assessment of function of 61.[2] *Id.* She

---

[2] The GAF scale is a common tool for tracking and evaluating the overall psychological functioning of a patient. A score of 41-50 indicates "severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." A score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." A score of 61-70 indicates "some mild symptoms, (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH ed. (DSM-IV), at 32 (1995).

opined Plaintiff may have problems with pace on complex multi-step tasks. *Id.*

Dr. Ashley evaluated Plaintiff in April 2004. (Tr. 32.) She noted he reported lifelong depression and anxiety and opined that he was severely limited for at least 12 months due, in part, to coronary artery disease and depression/anxiety. *Id*. When the Department of Social and Health requested Dr. Ashley to redo the examination based on the cardiac surgeon's assessment that Plaintiff's heart condition no longer prevented him from working, she opined that, despite his severe underlying depression and anxiety, he could work at the sedentary level. *Id*.

Dr. Jay B. Toews, a medical expert in psychology, testified that the record failed to show that the claimant had a severe mental impairment. (Tr 33.)  Dr. Toews noted that testing performed by Dr. Everhart suggested malingering.  *Id*.  Attention and concentration testing were within normal limits; he had a normal working memory and processing speed; and Trails A and B were within normal limits, further supporting malingering.  (Tr. 34.)  Dr. Toews stated that the record supports a diagnosis of personality disorder, nos, and episodic depression, but neither reflected evidence of schizoid features, nor did the record indicate somatoform disorder. *Id.* The valid MMPI did not support a diagnosis of anxiety. *Id*. According to Dr. Toews, the record did not support the limitations assessed by Dr. Arnold, because in addition to the normal test results, there was no evidence of difficulty of social interaction at work, no angry outbursts, no antisocial behavior or other behavioral extremes. *Id*.  Any difficulties encountered by the personality disorder would be mild, so Dr. Toews testified that the mental

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

impairment caused by the personality disorder was not severe. *Id.*

Plaintiff argues that the ALJ did not properly reject the opinions of her examining psychologists when she relied upon Dr. Toews' testimony. (Ct. Rec. 18 at 19.) The ALJ is responsible for resolving conflicts and ambiguities in the evidence. *Sample v. Schweiker*, 694 F. 2d 639, 642 (9th Cir. 1982). The analysis and opinion of an expert selected by an ALJ may be helpful in her adjudication and resolution of conflicting medical testimony. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995), citing *Magallanes*, 881 F.2d at 753. Courts have upheld an ALJ's decision to reject the opinion of an examining physician based, in part, on the testimony of a non-examining medical advisor. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001); *Lester*, 81 F.3d at 831. Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Magallanes,* 881 F.2d at 752. A reviewing court may not second guess the ALJ if the evidence rationally supports his or her determination. *Andrews*, 53 F.3d at 1039-40. If supported by substantial evidence, the ALJ's decision must be upheld, even where the evidence is susceptible to more than one rational interpretation. *Id.*

In her evaluation of the medical evidence, the ALJ must set forth specific reasons for the weight given to all acceptable medical source opinions. *Id.* at 1042. If the ALJ rejects a contradicted medical opinion, she must give specific, legitimate reasons for doing so. However, the court does not require a "special incantation" in the rejection of medical opinions. Rather, the reviewing court may draw specific and legitimate inferences from

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

the ALJ's summary of the evidence, interpretation and findings, as long as they are supported by substantial evidence in the record. *Magallanes*, 881 F.2d at 755.  Historically, courts have recognized internal inconsistencies, conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding an examining physician's opinion. *Thomas,* 278 F. 3d at 957; *see also Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 605.  Further, the more consistent an opinion is with the record as a whole, the more weight is given to that opinion. 20 C.F.R. § 404.1527(d)(4).  The ALJ does not need to accept the opinion of any medical source if it is conclusory, brief or unsupported by findings. *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

As summarized and interpreted by the ALJ, the medical evidence reveals specific and legitimate inferences that support the ALJ's rejection of the assessments that Plaintiff had severe mental impairment.  (Tr. 35, 37-41.)  The ALJ made specific findings rejecting the diagnoses and assessed limitations of Drs. Bailey, Arnold, Ashley, and Everhart.  (Tr. 37-41.)  Specifically, the ALJ noted the inconsistencies in the record regarding the claimant's self-reported symptoms, the lack of narrative support for diagnoses, and limitations assessments that were at odds with results of psychological testing performed by the examining doctors. *Id.*

ALJ Reed properly rejected diagnoses based solely on the claimant's self-reported symptoms. She found that the claimant was not fully credible. (Tr. 37.) Several tests suggested malingering.

(Tr. 37.)  Further, the ALJ reviewed the claimant's testimony and found many inconsistences. (Tr. 36-37.)  The ALJ found that lack of credibility and malingering undermined assessments and diagnoses based solely on self-reported symptoms. (Tr. 38-39.)

The ALJ properly found that Dr. Bailey and Dr. Arnold's evaluations were not validated by test results or their narratives supporting their diagnoses and assessments.  Dr. Bailey assessed cognitive limitations despite a normal mini-mental status test. (Tr. 38.)  He opined that Plaintiff had significant social limitations, citing a MMPI which he acknowledges was invalid.  *Id.* Dr. Arnold's diagnosis differed from Dr. Bailey's. The MMPI administered by Dr. Arnold showed exaggeration of symptoms.  *Id.* He performed cognitive testing showing borderline intellectual functioning; however, the ALJ discounted this test because similar tests performed by Dr. Everhart suggested that the claimant feigned memory/cognitive difficulties.  *Id.*  Dr. Arnold diagnosed an anxiety disorder, but failed to provide any narrative basis for the diagnosis.  *Id.* The limitations assessed by Dr. Arnold were based solely on the claimant's subjective complaints. (Tr. 38-39.)  Since the ALJ determined that the claimant was not credible, the ALJ rejected Dr. Arnold's limitation assessments.  *Id*.

The ALJ properly found that Dr. Everhart's assessments of "moderate" and "marked" limitations were not supported by her findings.  The ALJ credited Dr. Everhart's findings and assessment of test results including Dr. Everhart's diagnosis of malingering. (Tr. 40.)  Results showed malingering in the tests for concentration and attention.  *Id.* Dr. Everhart assessed marked/moderate limitations in attention and concentration and social awareness.  *Id.* However,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

the ALJ determined that Dr. Everhart's determination of malingering and her narrative describing the claimant's long term relationship, positive social skills, and good grooming did not support her assessment of "marked" or "moderate" limitation of social expectations. *Id.*

Lastly, the ALJ properly rejected Dr. Ashley's diagnosis of severe depression and anxiety. First, Dr. Ashley's diagnosis relied entirely on the self-report of the claimant who was determined not to be credible. (Tr. 37, 27.) Secondly, Dr. Ashley's assessments of Plaintiff's work ability suggests that the depression did not prevent him from working. (Tr. 32.)

In sum, ALJ Reed properly found that Dr. Bailey, Dr. Arnold, and Dr. Everhart's conclusions were not supported by their findings. The ALJ adopted the "persuasive testimony of Dr. Toews," after she thoroughly discussed and analyzed Dr. Arnold, Dr. Bailey, and Dr. Everhart's assessed limitations and rejected their opinions with specific and legitimate reasons, *i.e.,* lack of credibility of the claimant, lack of narrative explanation of the diagnoses, and test results that contradicted the assessments. (Tr. 40-41.) In the case of Dr. Arnold, lack of narrative explanation in several instances suggests conclusory diagnoses. (Tr. 39.) It should be noted that though Dr. Arnold, Dr. Bailey and Dr. Everhart each assessed "marked" and "moderate" limitations, they rarely agreed among themselves which of the limitations applied to Plaintiff. (Tr. 27-30.) Lack of consistent opinions requires the ALJ to determine the severity of limitations.

The record in its entirety supports the ALJ's reliance on Dr. Toews' opinions and her ultimate decision that the Plaintiff had no

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

severe mental impairment.  The ALJ did not err in her evaluation of the medical evidence.

**CONCLUSION**

The ALJ properly rejected the examining psychologists' opinions that Plaintiff had severe mental limitations.  The ALJ's reliance on Dr. Toews' testimony, which is supported by other evidence in the record, was not legal error.  The ALJ's ultimate findings, are supported by substantial evidence in the entire record. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 17)** is **DENIED.**

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 20)** is **GRANTED**.

3. Judgment for the **DEFENDANT** shall be entered. The District Court Executive is directed to enter this Order, forward copies to counsel, and thereafter shall close this file.

DATED February 1, 2007.

                     S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE